We can call the next case, the last case. All right, on behalf of the appellant. May it please the court, my name is Daniel Mallon. I'm sorry, last name? Mallon. Mr. Mallon from the Appellant Defender's Office. Correct. Good morning. Assistant State Appellant Defender. I represent Emeritus Adair. I plan today to address, to limit my argument to the first issue. Is this your first time arguing here? Yes, it is. Well, good morning again and welcome to that. Thank you very much. Today I plan to limit my argument to the first issue we raised, which was the commingling of non-homogenous bills. And you have the good fortune of having the author of the case that you principally rely on. I am aware of that, Your Honor. But on the second issue, if you have any questions, I will of course ask them. Answer them. It is uncontested here that the 24 pills that were recovered from Emeritus Adair were in fact non-homogenous. That was conceded by the State. Well, the 24 turned into 21 plus three fragments of pills. Yes, that's correct. And then there was loose powder. Correct. What I still don't understand is, and I don't recall what the drugs are, methamphetamine and what's the other one? MDMA. MDMA. All right. MDMA seems to be based on powder. Or is it the other way around? No, MDMA is based on pills, right? A number of pills. Correct. And methamphetamine is a powder which goes by weight. Yes, but methamphetamine can be found in pill form. It's just the statute he was charged and convicted of is based on weight. Let me ask you this. If the pills had both of these drugs in them, would he be properly charged with both offenses? Yes. Or would the State have to choose one or the other? He was properly charged with both offenses. Well, let's say it's a bag weighing a gram and it has both cocaine and heroin in it. Okay. The guy is going to be convicted of both heroin and cocaine possession, and it's going to be in the amount of heroin plus the amount of cocaine for the conviction of heroin, and it's going to be the amount of, and he's going to be convicted of possessing a certain amount of cocaine when the weight also includes the amount of heroin? Not entirely positive on the law concerning commingled. Well, that's what I was wondering about, this methamphetamine and the MDMA. One is pills, according to the charges. The other is powder. And I was wondering whether the powder that was loose in the bag, that was the meth? Where did the meth come from? Well, in this case, it was unclear where anything came from. It came from the bag. It came from the bag. From your perspective, then, just as a matter of being a good defense attorney, you no longer have to flush the drugs down the toilet when the police burst in. All you have to do is crush what's in the bag because that's basically what the tester did. She crushed the stuff. So if I crush it and I'm the mark, I'm the defendant, I'm home free. The state is never going to be able to prove anything. Yes, they are. Or they're going to be able to prove the lesser amount, and that's what you're asking for. The lesser amount. You're asking for a remand on the class four. Isn't that true? Class one and class two. Yeah, you're asking that they both be reduced. Why should they have control over my own destiny with respect to what I'm charged with, what I do with the material before the police get their hands on it? She didn't crush. When the pills got to the lab the way I understand it, that there was some crushed particles and then the number of pills had been reduced from 24 to 21. Correct. She testified that there were 21 pills, three pill fragments. But you're not really contesting that these substances were altered or anything. What you're contesting is that the way that the testing was done doesn't establish the classes that the state prosecuted. Correct. We are contesting that it was not Adair who crushed them and commingled them. It was when they were received by the police. It was one bag, though. It was one bag, correct. But there was 24 pills within the bag. I thought he did say there were 24 pills but there was some powdery amount in there. And she claimed that the pills themselves disintegrated in her hands or fell apart so that she may not have been she did eventually have to break them down to weigh them, I think, to test them. But they were breaking down on their own as well. They were breaking down on their own. She testified that as she was examining them, there was powder, a little powder from each that was breaking off. Do we know it was from each? Well, we don't know. Well, she testified that there was powder from each that crumbled into the dish, but she had to take the additional step to ensure that powder from each was being crumbled into the dish. She testified that she had to poke at each pill with a glass rod. So it goes to show that the pills were, in fact, intact. They maintained their integrity while she was examining them. She could have separated the pills that matched. Yes. Nothing precluded her as a lab technician from doing that. And she never testified that somehow she couldn't separate the ones that were Superman-shaped and the ones that were pink versus those that were purple. That is correct. And she could have tested, let's say, you know, and this is, let's say it was the M&M distributor who likes different colored pills, but the pills were all the same. Had she tested one red and one blue and found them to be identical, then maybe she could have said, and maybe one purple and one of each and found that they were identical, then she could have treated them all identical. But she didn't test them separately. Correct. She commingled them into one representative sample, and it was her testimony that she tested them as one item. So we don't even know whether a single pill contained both banned substances. Correct. Do we? No. It is pure guess, speculation, and conjecture. But we do know that there was, that in this baggie, there was a controlled substance consisting of methamphetamine and MDMA also referred to or commonly referred to as ecstasy. Yes. All right. What we don't know is, or what's just left is speculation is how much of it. Did she testify that, that the expert testified that methamphetamine and ecstasy are often combined in pills? And would that have made a difference? That would not have made a difference, whether or not they're often combined in pills, because they had a burden to prove that there was 15 MDMA pills and a separate burden to prove that there was 5 grams of methamphetamine. So she could have tested all the separate pills separately, determined that each pill did, in fact, contain methamphetamine and MDMA, and then based on her, based on a proper testing procedure, she could have determined that the quantity and weight actually existed. But what she did, by her method, there was no way of knowing that just one. What's your best case for arguing that the method that she used was fatal to the state's burden to prove? I believe it's this court's recent case in People v. Clinton. I was afraid he was going to say that. It's very similar on the fact pattern. In that case, there was a, well, here we have six different types of pills, at least six. There was six different separate packets of a white powder, suspected to be heroin, I believe. And what the chemist did there is she tested or he tested each packet and then emptied them all and commingled six packets and tested those packets. And there was no way to know whether one packet was positive or all the packets were positive. Here, the pills were counted and then commingled into a mixture. That mixture was tested, and there was no way to know whether one pill was positive or all the pills were positive. And just as this court reduced the convictions there because they didn't prove the proper quantity, one gram of heroin, I believe, there. Here, they did not prove that there was 15 pills, and that class one conviction should be reduced to class four, which is less than 15. So he was convicted of which class? Class one on the MDMA. And a class? Two on the methamphetamine. Possessing less than 15 pills of MDMA is a class four. And you're suggesting that we not simply remand, but we reduce the offenses and then just end the case here? Oh, then we'd have to remand for resentencing? So if we're going to remand for resentencing, why don't we just vacate the two convictions saying that there's reasonable doubt? And as to any lesser offense, we leave it to the circuit court to decide. Or any proper conviction, we leave it to the circuit court to decide what that should be. Because what if the circuit court says, I think he can be properly convicted of the class two methamphetamine because everything really ended up in powder? Could he do that? Could he say, I'm just going to strike the MDMA because the pills weren't individually analyzed. There were different colored ones with different logos on them, and they may not have all been MDMA. But as to the powder, you know, we treat powder differently. We say, even though powder has other inert substances, we give the full weight of any substance with detectable amount of a controlled substance. The conviction stands for the full weight. Could the judge enter a conviction on the class two meth? No, because it was not proven that he had five grams of methamphetamine. The powder, in this case, was encapsulated in pills. The pills are what save you from the other alternative that Coleman set out, isn't it? If it had been all powder and no pills involved. Because everything was in the same bag. Correct, yes. And the Coleman hypothetical would have been applicable if there were no pills. Yes, that's correct. And the pills, to analogize to the Clinton case, the pills are the equivalent of those packets. Correct. And those packets had to be tested separately. As to the alternative hypo and Coleman, yes, it's because that pills do not become one substance when they're put in the same bag, whereas powders do become one substance when they're put in the same bag. All right. So that alternative hypothetical does not. We'll give you a couple minutes to present a rebuttal argument. Thank you very much. All right. May it please the Court. My name is Marie Quinlivan Chek, and I represent the people of the state of Illinois. I'm sorry, your surname? Chek. Chek? Chek is fine. It's our position that this case falls between Clinton and Kalutis. Right. Clinton, you've got the individual packets poured together, and the chemists test them all. And Kalutis, you've got the hundred individual tablets separate, all identical, but distinct from each other. Here you've got a bag that's got at least three pills that have disintegrated and formed a powder that has covered absolutely everything else. So at this point, those pills are no longer distinct. Even the police officer, when he was doing the inventory at the station, said he counted the pills inside the bag. He didn't think he could take them out. But, you know, let's talk about the penalty that's imposed. For the tablets, it's based on the number of pills, correct? It is. And in this case, there were three yellow tablets. There were four lavender tablets. There were six orange tablets. There were four red tablets. The point is that there were a number of multi-colored pills. Yes. Now, isn't it possible that some of those pills were fake? Sure. Okay, so does the defendant, under the statute, is he to be convicted for a controlled substance, the one that you charged, or is it for something else? He's to be convicted for what we charged, because he's the one who put it all together in the bag. Right. He's the one who stored them that way. But either way, we don't have homogenous substances here. We have six different, no, actually eight. So if some of them don't have anything in them, he can't be penalized for that. Can he? But by the time we were able to test them, they were all coated with a powder that had come from the entire bag. Are you saying that she didn't, the forensic scientist did not participate in the breaking down of the pills? Absolutely. On page 140, she says she takes the glass rod, you know, and she taps a little bit off each one. Did that break down that pill? Yes, it did. But my point is, before that, when she is initially given the bag, she dumps the bag out into the weigh dish. Already three pills have disintegrated. She can test every single pill, can't she? She can, but we don't have this issue. Isn't that true? Correct. Let's go back to Justice McBride's question regarding the number of pills, because let's say you have a bag of 100 pills. Only one pill in that bag is an MDMA pill. The others are fake. So you believe they are a controlled substance. They're sent to the lab. The lab chooses one at random because they're all identical. It's going to come out, the odds are 99 out of 100 that it's going to come out not a controlled substance. So the guy can walk. But if she picks out the one that happens to be a controlled substance, are you saying that he should be convicted of possessing of 100 MDMA pills, even though the other 99 turn out to be fake? My reading of Kalutis is that... What about Jones? Kalutis is an appellate court case. What about the Supreme Court decision in Jones? Are we going to ignore that case? No. Can I? Sure. Okay. So go back to your hypothetical here. Under Kalutis, it is okay to do a random sample. And if that random sample comes up positive, even if everything else is negative... Well, let's say a random sample comes up negative and she believes that there's got to be something in there. So she does 99 random samples until she finds that one with the MDMA pill. Is he properly charged with 100 as opposed to just one? I don't think that's really quite what's in front of us here, but... Well, is Kalutis in front of us here? Kalutis was 100 tablets with identical markings, lettering characteristics, beveling, and scoring. How can you compare Kalutis to this case? I began my argument by saying this case is not Kalutis and it's not Clinton. Is it Jones? It's somewhere between the two. Is it Jones? Well, it's not quite Jones either, because Jones, there's five individual bags of the rock cocaine or the rocky substance. And the court says, okay, it's not like pills that are individually labeled, stamped, you know, that are completely integrity is intact. Who knows what's in these bags? You've got to test all of those bags. But here, what we've got is everything mixed together. We don't have five separate bags like there were in Jones. Let's start from that position. Does that usually work against? Does that work against the defendant or does that work against the state? And it's related to my question. Let's say, you're right, this case falls between these two. Yes. How do we decide where this case is, which case this case is closest to? Is it closest to Clinton or is it closest to Kalutis? And going to Justice McBride, how do we decide that question when we, don't we have to keep in mind who benefits from these, you know, from the absence of actions that could have resolved the question in front of us? If action could have resolved the question in front of us, who should suffer the consequences when that action wasn't taken? Should it be the defendant, as Justice McBride questions? Should it be the defendant who, you know, when the state had those pills in front of it and could have examined each one of those or at least one of each color and yet chose not to? Should the defendant be held, should be punished as if they had? I think the difference here, though, is these pills were not unique. I mean, these pills were not separate. Their integrity had not been, yes, I know, I completely admit, there's a million different kinds of pills here. There's no contest about that. But the point is their integrity was not intact. The powder had already covered all of them. Because they were all put in a bag, the defendant put them in the bag. So that's why it should be the defendant's fault. When the police retrieved this at wherever it was, gas station or what, I don't recall exactly, but they retrieved multiple types of pills. They're all sorts of colors. I mean, this is not a homogenous group of tablets at all. And wait, wait, wait. There were 24 when they get the pills. By the time it gets to the lab, there's 21. So the 21 are still different. They're not smashed like you're suggesting. The chemist testified to the colors, the labels, and everything. So how can you suddenly change what she said? She, in fact, testified that there were 21 pills, and many of them were not the same. So, I mean, I don't know where we're going with this idea that they're somehow all alike. Because when they got to the lab, they really weren't all alike. But you're saying they were. Because she said they were all cross-contaminated by the red and orange powder that had been developed from the other pills. So what? The other pills had been crushed. Do we know what that powder was? I assume it was the powder from the other pills. Well, what if the contamination went the other way around? What if that was an inert substance, and the breaking down of the pills contaminated the inert substance? So the powder really wasn't a controlled substance at all. See, part of your problem, and you've got to live with Jones, weight is not an inference that you can use. Weight must be proved beyond a reasonable doubt. And you can't have a chain of inferences that give you that weight when there is a missing link in the chain of inferences. The only thing I go back to then is the hypothetical. Because you're stuck with, I've got to prove weight beyond a reasonable doubt. If you could infer weight, okay, and it wasn't a question of beyond a reasonable doubt, and only possession was beyond a reasonable doubt, then you'd be okay. He possessed, and we could infer that it weighed this much. But the statute and Jones don't say that. Weight itself must be proved beyond a reasonable doubt. And that's where the state has this big boulder in front of them. But that's what brings us back to the hypothetical in Coleman. Okay, in Coleman they say you've got a bag of baking soda here and a bag of cocaine here, and if they're separate, then the state can only make the defendant liable for the cocaine because it's separate. If the defendant blends them together, I mean, many drugs have fillers. I mean, many drugs are cut with fillers. You're claiming that he did blend them. Right. He didn't blend them. But the chemist said there were 21 pills that were not blended. In one bag. The chemist said there were 21 pills. She didn't say they were blended. She said there was 21, and she took a little bit. She poked every single one and put it all together. Isn't that what she said she did? Because they were already coated with the red and orange substance, the red and orange powder from the other pills. But the point is there were still 21 separate pills. Nothing precluded her from testing those 21. The concept of blending, just so it's clear, the concept of baking soda and a controlled substance each looking alike but in separate bags, the concept of blending comes from the inability to distinguish once they're put together. So even though you're claiming blending, the forensic scientist could still have distinguished each of those items that were in the bag by virtue of their color, their logo, whatever else she identified that she was able to see. And to the extent that she was able to distinguish those items, there is no blending, at least not that I can see. But anyway, why don't you wrap it up, then? And so the question is, you know, why do you think that this case is really closer to the case you're relying on?  Coluis. Coluis. Now, why do you think this case is closer to that case and not to Clinton? And that will be a wrap-up. I think this case is different from those cases. I think this case is in between. Right. It's in between, but you would get it closer to the one that you support. Right, Coluis. Right. Okay, because the defendant is the one who put the drugs into the bag. All right. The defendant is responsible for what's in the bag. The drugs crumble. They disintegrate, not through any action on the part of the State. They then cross-contaminate everything that's in the bag, so that absolutely nothing in the bag can be tested separately, because there's no wonder the integrity of each pill is no longer intact. It's our position, because it's all mushed together in one bag, all this powder all together, that the chemist did the right thing, put it all together, and we charged them appropriately. Take note of that can't be tested separately being very much disputed. All right. Thank you very much. I understand. Thank you. All right. Counsel, Barry Berchley. Yes, these pills could be tested separately, as Justice Brey pointed out. They were not cross-contaminated. They were perhaps covered in a red powder, but this red powder was not tested separately, which that could have been tested separately as well. This case is between Kaloudis and Clinton. Kaloudis said that even though pills are in the same bag, you have to look at their physical characteristics, and it is only when that they are homogenous that you can use some sort of random or representative testing method. Clinton says that if samples or suspect drugs are non-homogenous, you have to test each physically separate type, and the chemist here could have done that. She did not do that. Therefore, the State proved to prove quantity and weight beyond a reasonable doubt, and his conviction should be reduced. All right. Thank you very much. The case will be taken under advisement. Court is in recess.